Kathleen **JENKINS**, Plaintiff,

v.

**ARCADE BUILDING MAINTENANCE,** Initial Cleaning Service, Local 32B–32J, Petar Dedovic and Argirre Lolovic, Defendants.

No. 98 Civ. 3133(RWS).

United States District Court, S.D. New York.

April 6, 1999.

Joan Franklin Mosley, New York City, for plaintiff.

Harry Weinberg, New York City, for defendants.

## OPINION

SWEET, District Judge.

In this action alleging discrimination on the basis of race, color, national origin, and gender, and retaliation for making such claims, in violation of 42 U.S.C. § 1981, and conspiracy in violation of 42 U.S.C. § 1985, defendants Initial Contract Serviced ("Initial")—sued as "Initial Cleaning Service"—Petar Dedovic ("Dedovic"), and Argirre Lolovic ("Lolovic") (collectively, "Defendants") have moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint of plaintiff Kathleen Jenkins ("Jenkins").

For the reasons set forth below, the motion is granted, the complaint is dismissed, and Jenkins is granted leave to replead in accordance with this decision.

### Parties

Jenkins is an African American woman and a New York resident.

Defendant Arcade Building Maintenance ("Arcade") was Jenkins' employer "during the relevant period leading to her discharge" on May·3, 1995. (Compl.¶ 3.)

Initial is the successor company to Arcade, "with reference to at least the latter's building maintenance functions, or some of them." (Compl.¶ 4.)

Dedovic was, at the time relevant to this action, the building supervisor for Arcade and Initial.

Lolovic was, at the time relevant to this action, supervisor for Arcade and Initial.

Defendant Local 32B–32J Service Employees International Union, AFL–CIO, is the labor organization to which Jenkins belonged.

### Prior Proceedings

Jenkins filed her complaint ("Complaint") in this action on May 1, 1998. The instant motion was filed on November 3, 1998, and was considered fully submitted on November 25, 1998.

### Facts

In considering a motion to dismiss, the facts alleged in the complaint are presumed to be true and all factual inferences must be drawn in the plaintiff's favor and against the defendants. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985). Accordingly, the factual allegations considered here and set forth below are taken from Jenkins' Complaint and do not constitute findings of fact by the Court. They are presumed to

be true only for the purpose of deciding the present motion.

Jenkins was hired by Arcade as a cleaner in 1990. In 1993, she filed a complaint against Arcade with the New York City Human Rights Commission ("NYCHRC") and the Equal Employment Opportunity Commission ("EEOC"), charging it with discrimination.

According to Jenkins, subsequent to filing the complaint and continuing to her discharge, she was harassed by Defendants with regard to her building assignments, work assignments, and floor assignments. Additionally, she was battered and called names. Jenkins moreover asserts that her seniority was being manipulated and others with less seniority were permitted to take precedence over her with reference to building assignments, work assignments, and lay-offs.

Jenkins submits that she was laid-off and never recalled because she had complained to the EEOC and NYCHRC about the discrimination she faced at her job. Jenkins contends that non-African Americans, as well as persons with less seniority who never complained about discrimination, have been recalled.

Jenkins alleges that the discrimination to which she was subjected was based on race, color, national origin, and sex in violation of § 1981. She also alleges that Defendants retaliated against her because of her race, color, national origin, and sex in violation of § 1981. Finally, the Complaint asserts that Defendants conspired amongst each other against Jenkins on the basis of her race, color, and national origin in violation of § 1985.

## Discussion

### I. Standard for Reviewing a 12(b)(6) Motion

In deciding the merits of a motion to dismiss for failure to state a claim, all material allegations composing the factual predicate of the action are taken as true, for the court's task is to "assess the legal feasibility of the complaint, not assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (*quoting Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980)). Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Additionally, on a Rule 12(b)(6) motion, consideration is limited to the factual allegations in the complaint, "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993); *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991). For this reason, the affidavit of Brendan Carr in support of the motion to dismiss will not be considered.

### II. Jenkins' Causes of Action Brought Pursuant to § 1981 Are Dismissed

According to Defendants, Jenkins' First and Second Claims for Relief, alleging violations of § 1981, cannot lie because they contain solely conclusory allegations of discrimination and retaliation and have been filed beyond the period allotted by the statute of limitations.

### A. Jenkins Has Failed to State a Prima Facie Case for Discrimination Based on Race, Color, and National Origin or for Retaliation

Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. To state a claim under § 1981, the following must be alleged: "(1) the plaintiff is a member of racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, make and enforce contracts, sue and be sued, give evidence, etc.)." *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir.1993).

The essential elements of the claim are actions that were racially motivated and purposefully discriminatory. *See General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). In order to survive a motion to dismiss, "the events of the intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for the defendant's actions must be specifically pleaded in the complaint." *Yusuf v. Vassar College*, 827 F.Supp. 952, 955 (S.D.N.Y.1993), *aff'd in part and vacated in part*, 35 F.3d 709 (1994); *see Albert v. Carovano*, 851 F.2d 561, 571–72 (2d Cir.1988). Conclusory or naked allegations will not suffice. *See Mian*, 7 F.3d at 1088 (dismissing § 1981 claim and stating that "[a]t this point, Mian's complaint fails to offer more than conclusory allegations that he was discriminated against because of his race"); *Pointer v. Columbia University*, No. 95 Civ. 8418, 1997 WL 86387, at *5 (S.D.N.Y. Feb.28, 1997) ("The Court finds that Plaintiff fails to state a claim under section 1981 . . . because she does not allege any facts supporting an inference that this poor treatment was motivated by race discrimination."). Fact-specific allegations of a causal link between the defendant's actions and the plaintiff's race are required. *See Albert*, 851 F.2d at 572–73.

■ To state a *prima facie* case for retaliation, the plaintiff "must show that [she] was engaged in a protected activity [of which the employer was aware]; that [she] suffered an adverse employment decision; and a causal connection between the protected activity and the adverse employment decision." *Taitt v. Chemical Bank*, 849 F.2d 775, 777 (2d Cir.1988) (*citing DeCintio v. Westchester County Medical Ctr.*, 821 F.2d 111, 115 (2d Cir.1987)).

According to Jenkins, as set forth in the Complaint, she was harassed by "the defendant companies' supervisors, by name calling, battering, disparate work assignments and ultimately by discharging plaintiff on May 3, 1995." (Compl.¶ 11.) Jenkins also contends that "her seniority was being manipulated to allow others with less seniority to take precedence over her with reference to building assignments, work assignments and lay-offs." (Compl.¶ 14.) Finally, she submits that she "has never been recalled although persons with less seniority than hers and persons who have not complained about the discriminatory actions of the defendants have been recalled and person [sic] who are non-African American have been recalled." (Compl.¶ 15.)

■ The Complaint lacks allegations of racial animus and intentional discrimination necessary to state a cognizable claim under § 1981. It is devoid of facts to support Jenkins' determination that the actions taken by Defendants were motivated by her race, color, or national origin. For instance, Jenkins asserts that she was called names. However, she does not allege what names she was called or by which defendant. Without such details, it cannot be determined whether the alleged harassment was racially motivated. Apart from the allegation that Jenkins has never

been recalled, while those with less seniority and those who are non-African American have—even this is a very generous reading of the Complaint—specific allegations of discrimination and retaliation demonstrating intentional discrimination and racial animus are absent from the Complaint. *See, e.g., Mian,* 7 F.3d at 1088; *Pointer,* 1997 WL 86387, at *5; *Yusuf,* 827 F.Supp. at 955.

■ Moreover, as regarding the retaliation claim, while being laid-off and not recalled may be an adverse employment action, Jenkins has failed to allege a causal connection between her filing a complaint with the NYCHRC and EEOC and her lay-off. Indeed, the requisite causal connection may be established "indirectly by showing that the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. College of Physicians and Surgeons,* 842 F.2d 590, 593 (2d Cir.1988) *(citing Davis v. State Univ. of N.Y.,* 802 F.2d 638, 642 (2d Cir.1986)). However, Jenkins states that her complaint was filed in 1993 and that she was laid-off on May 3, 1995. The temporal relationship is tenuous. Furthermore, although she claims that the harassment, including name calling, battering, and disparate work assignments, began subsequent to her filing the complaint, as already noted, Jenkins does not give any examples of such harassment so as to establish that the actions were discriminatory.

Jenkins urges that her allegations comply with Rule 8, as she has alleged a short and plain statement of her claims and that discovery is the stage in which information will be acquired to flesh out the Complaint. Still, Rule 8 does not allow for conclusory and vague allegations, such as those contained in the Complaint. *See generally, Mian,* 7 F.3d at 1088; *Albert,* 851 F.2d at 572–73; *Pointer,* 1997 WL 86387, at *5.

Indeed, certain information Jenkins has not pleaded is not within the control of Defendants such that discovery is needed before it can be brought to light. Using the allegations of name calling and "battering" as examples, Jenkins certainly is aware of the names that she was called and how she was "battered."

Accordingly, the First and Second Claims for Relief are hereby dismissed with leave to replead.

### B. *Sex Discrimination Is Not Actionable Under § 1981*

■ Section 1981 prohibits race discrimination. Allegations of gender, or sex discrimination are not actionable under the statute. *See, e.g., Wolper v. McGraw–Hill, Inc.,* No. 94 Civ. 0976, 1997 WL 252032, at *8 (S.D.N.Y. May 13, 1997); *Grant v. Morgan Guaranty Trust Co.,* 548 F.Supp. 1189, 1192 n. 5 (S.D.N.Y.1982); *O'Connell v. Teachers College,* 63 F.R.D. 638, 640 (S.D.N.Y.1974); *see also Runyon v. McCrary,* 427 U.S. 160, 167, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

Accordingly, the § 1981 claims premised on gender discrimination are dismissed. Jenkins may replead these claims under the proper statute if, keeping in mind the discussion above, she has grounds to do so and the claims do not violate the appropriate statute of limitations.[1]

### C. *Jenkins Has Not Adequately Pleaded a Continuing Violation*

■ The statute of limitations for claims brought under § 1981 is three years. *See Cornwell v. Robinson,* 23 F.3d 694, 703 (2d Cir.1994); *Tadros v. Coleman,* 898 F.2d 10, 12 (2d Cir.1990); *Graaf v. North Shore University Hosp.,* 1 F.Supp.2d 318, 323 (S.D.N.Y.1998) *(citing Keyse v. California Texas Oil Corp.,* 590 F.2d 45, 47 (2d Cir.1978)); *Johnson v. Nyack Hosp.,* 891 F.Supp. 155, 162

1. From the face of the Complaint, this Court is not confident of Jenkins' ability to plead claims premised on sex discrimination. Other than the fact that she is a woman, she has failed to assert any basis from which disparate treatment or harassment based on her gender can be inferred.

(S.D.N.Y.1995), *aff'd*, 86 F.3d 8 (2d Cir. 1996); *Gilliard v. New York Public Library System*, 597 F.Supp. 1069, 1076 (S.D.N.Y.1984). The claim accrues and the limitations period begins to run when the plaintiff has notice of the act that is claimed to have caused the injury. *See Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981); *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir.1994); *Morse v. University of Vermont*, 973 F.2d 122, 125 (2d Cir.1992); *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 23–24 (2d Cir.1985).

According to Defendants, because the Complaint was filed on May 1, 1998, each allegation of discrimination in the Complaint referring to events that allegedly occurred prior to May 1, 1995, are time-barred, and the only event pleaded by Jenkins that falls within the statute of limitations was the cessation of her employment with Initial on May 3, 1995.

Jenkins, however, purports in her opposition papers, without citing any authority, that her allegations, such as those existing within the area of seniority, constitute continuing violations and therefore remain viable, and that because she asserts that all of her claims for relief against Defendants persisted up and to the time of her discharge, they should be sustained.

■ As an initial matter, while the issue is unresolved in this Circuit, as this and other courts have found, the continuing violation may be applied to § 1981 claims. *See, e.g., O'Shea v. City of San Francisco*, 966 F.2d 503, 506 (9th Cir.1992); *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1309 (7th Cir.1989); *Abidekun v. New York City Transit Auth.*, No. 93–CV–5600, 1998 WL 296372, at *3 (E.D.N.Y. June 4, 1998); *Harkins v. City of New York*, No. 97–CV–2309, 1998 WL 817689, at *5–*6 (E.D.N.Y. Feb. 5, 1998); *Robinson v. Metro–North Commuter Railroad Co.*, Nos. 94 Civ. 7374, 95 Civ. 8594, 1998 WL 17742, at *1 (S.D.N.Y. Jan.16, 1998); *Kim v. Dial Service Int'l, Inc.*, No. 96 Civ. 3327, 1997 WL 5902 (S.D.N.Y. Jan.8, 1997); *Williams v.*

*Chase Manhattan Bank, N.A.*, 728 F.Supp. 1004, 1007–08 (S.D.N.Y.1990).

"The continuing-violation exception 'extends the limitations period for all claims of discriminatory acts committed under [an ongoing policy of discrimination] even if those acts, standing alone, would have been barred by the statute of limitations.'" *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir.1998) (*quoting Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906–07 (2d Cir.1997)). Under the doctrine, events that occurred prior to May 1, 1995, would be viewed as part of a larger, timely claim so long as at least one discriminatory act complained of occurred within the statutory period. *See Cornwell*, 23 F.3d at 704.

■ The continuing violation doctrine is most commonly applied "when there is evidence of an ongoing discriminatory policy or practice, such as use of discriminatory seniority lists or employment tests." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996); *Nweke v. The Prudential Ins. Co.*, 25 F.Supp.2d 203, 217 (S.D.N.Y.1998); *Graaf*, 1 F.Supp.2d at 322. Additionally, a continuing violation may be found "'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Id.* (*quoting Cornwell*, 23 F.3d at 704). However, "discrete acts of discrimination that are not shown to be the product of a policy or practice do not constitute a continuing violation." *Dixit v. City of New York Dep't of Gen. Servs.*, 972 F.Supp. 730, 735 (S.D.N.Y.1997); *see Van Zant*, 80 F.3d at 713; *Cornwell*, 23 F.3d at 704; *Nweke*, 25 F.Supp.2d at 217.

■ The *Johnson* court identified three factors for consideration in determining whether alleged discriminatory acts are discrete, independent events or elements in a continuing violation. These factors are: (1) whether the alleged acts involve the same type of discrimination, (2) whether they recur frequently or are more

in the nature of isolated employment decisions, and (3) whether they exhibited a degree of permanence that should trigger the employee's duty to assert his rights. *See Johnson*, 891 F.Supp. at 163. Moreover, the continuing violation theory is available only if circumstances are such that a reasonable person in the plaintiff's position would not have sued earlier. *See Morris v. Amalgamated Lithographers of Am., Local One*, 994 F.Supp. 161, 164 (S.D.N.Y.1998); *see also Nicholas v. Nynex, Inc.*, 974 F.Supp. 261, 269 (S.D.N.Y.1997) (finding that alleged interrelatedness of denial of fair evaluations, promotions, and awards did not produce an ongoing violation so as to extend the statute of limitations).

 The Complaint does not contain allegations of discriminatory actions sufficient to invoke the continuing violation doctrine. As stated above, the allegations are conclusory and unsupported by any facts. The Complaint provides no guidance as to whether the acts complained of involved the same type of discrimination, were so frequent that they amounted to a discriminatory policy or practice, and were of a permanent nature such that Jenkins' duty to assert her rights was triggered. Moreover, the Complaint neglects to indicate which actions occurred prior to the limitations period, and—other than Jenkins' lay-off—which actions occurred once it had passed. Indeed, aside from the date of Jenkins' lay-off, the Complaint does not provide the dates on which any of the alleged discriminatory actions perpetrated by Defendants occurred. Jenkins merely states, in conclusory fashion, that she filed a complaint with the NYCHRC and the EEOC against Defendants in 1993 and that she was harassed from then until her discharge. On the basis of these skeletal statements, it is impossible to conclude that the events occurring prior to May 1,

1995, can be saved by the continuing violation doctrine.

Accordingly, at this juncture any events that occurred prior to May 1, 1995, are time-barred. While Jenkins will be given leave to amend the Complaint to state facts demonstrating a continuing violation, she is advised to research the doctrine and assess its applicability to her claims before relying on it to review any incidents that are fall outside the statute of limitations period.

### III. *Jenkins Has Filed to State a Cause of Action Pursuant to § 1985*

According to the Third Claim for Relief, "Defendants conspired amongst each other and against the Plaintiff by actions in tandem and independently on the basis of her race, color and national origin, in violation of 42 USC 1985." (Compl.¶ 23.)

Section 1985 provides in relevant part:

If two or more persons in any State or Territory conspire or go in disguise on the highway or the premises of another, for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action.

42 U.S.C. § 1985(3).[2]

 This statute provides a remedy for persons intentionally deprived of any constitutional rights or privileges by the conspiracy of two or more persons. To

---

**2.** Although Jenkins does not specify under which subsection of § 1985 she brings this action, only subsection three is applicable; § 1985(1) is entitled "Preventing officer from performing duties," and § 1985(2) is entitled "Obstructing justice; intimidating party, witness, or juror." 42 U.S.C. § 1985(1), (2).

state a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either, directly or indirectly, any person or class of person of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian*, 7 F.3d at 1087–88 (*citing United Brotherhood of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)); *see Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Additionally, the plaintiff must show that the conspiracy was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Mian*, 7 F.3d at 1088.

■ Section 1985(3) creates no substantive rights, but merely "provides a remedy for violation of the rights it designates." *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). The inquiry of which rights the statute "designates" is not always clear-cut. Remedy for conspiracies to deprive persons of their constitutional rights is without doubt available under § 1985(3). *See e.g., Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049; *Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338. Whether the statute provides a remedy resulting from private conspiracies to deprive persons of the equal protection of, or equal privileges and immunities under, federal statutory law, however, is not so clear.

Defendants submit that violation of § 1981 cannot be the basis for a remedy under § 1985(3). They cite to *Graaf*, in which the court stated that "[i]t is well-settled that plaintiffs cannot bring § 1985 actions 'based solely upon claims of employment discrimination.'" *Graaf*, 1 F.Supp.2d at 323 (*quoting Smith v. Local Union 28 Sheet Metal Workers*, 877

F.Supp. 165, 172 n. 12 (S.D.N.Y.1995) (*citing Novotny* and *Ladson v. Ulltra East Parking Corp.*, 853 F.Supp. 699, 704 (S.D.N.Y.1994)), *aff'd*, 100 F.3d 943 (2d Cir.1996) (table decision)).

■ Jenkins, however, claims that because *Novotny* held that the "deprivation of a right created by Title VII [of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-(3)a] cannot be the basis for a cause of action under § 1985(3)," *Novotny*, 442 U.S. at 378, 99 S.Ct. 2345, it is unsettled whether § 1981 can be the basis of a conspiracy under the statute. The Second Circuit has not spoken on the issue. While some courts have held that § 1981 may serve as the substantive basis for a claim brought pursuant to § 1985(3), *see, e.g., Jones v. Liberty Medical Ctr.*, No. K–89–3381, 1992 WL 533060, at *15 (D.Md. Oct.5, 1992), *aff'd*, 1 F.3d 1233 (4th Cir.1993) (table decision); *Chambers v. Omaha Girls Club*, 629 F.Supp. 925, 940 (D.Neb.1986); *Thompson v. International Assoc. of Machinists*, 580 F.Supp. 662, 667–68 (D.D.C. 1984), other have found that if the claim is essentially one for employment discrimination then it is not actionable under the statute, *see, e.g., Harris v. Niagara Mohawk Power Corp.*, No. 95–CV–788, 1998 WL 865566, at *6 (N.D.N.Y.1998); *Smith*, 877 F.Supp. at 172 & n. 12; *Ladson*, 853 F.Supp. at 704 n. 6. In accordance with these latter authorities, a § 1981 employment discrimination claim does not provide the basis for a claim under § 1985(3).

Granted, as Jenkins points out, the majority in *Novotny*, in reaching its decision, noted that Title VII cases "are subject to a detailed administrative and judicial process designed to provide an opportunity for nonjudicial and nonadversary resolution of claims," *Novotny*, 442 U.S. at 372–73, 99 S.Ct. 2345, and that "[i]f a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law." *Id.* at 376, 99 S.Ct. 2345. This, however, does not suggest—nor does it

necessarily follow—that a claim brought pursuant to § 1981 *can* form the basis of a § 1985(3) violation.

The *Ladson* court held, for instance, that "given Plaintiff's failure to assert any rights violation apart from employment related discrimination covered or closely related to that covered by Title VII, no action against the Defendants lies pursuant to § 1985." *Ladson*, 853 F.Supp. at 704 (footnote omitted). In that case, the court refused to sustain the § 1985(3) cause of action on the ground that a violation of § 1981 was alleged. *See id.* at 704 n. 6. "[A]lthough § 1981 affords an additional federal remedy against employment discrimination, it provides '[n]o greater or lesser protection' than Title VII." *Smith*, 877 F.Supp. at 172 (citation omitted) (*quoting Carrion v. Yeshiva University*, 535 F.2d 722, 729 (2d Cir.1976)). If a claim for race discrimination in employment brought under Title VII cannot form the basis for a § 1985(3) conspiracy claim, that same claim should not it be able to simply because it is brought under § 1981. *See generally Smith*, 877 F.Supp. at 172, n. 12 (dismissing § 1985(3) claims because the predicate violations were based "solely upon claims of employment discrimination" under § 1981 and Title VII).

Moreover, the concurrences in *Novotny* by Justices Powell and Stevens provide persuasive support for barring the instant § 1985(3) claim. Justice Powell stated:

> I write separately because it seems to me that the Court's decision affords unnecessarily limited guidance to courts in the federal system.
>
> The Court's specific holding is that 42 U.S.C. § 1985(3) ... may not be invoked to redress violations of Title VII. The broader issue argued to us in this case was whether this Civil War Era remedial statute, providing no substantive rights itself, was intended to provide a remedy generally for the violation of *subsequently created statutory rights*. For essentially the reasons suggested by Mr. Justice STEVENS, I would hold

that § 1985(3) should not be so construed, and that its reach is limited to conspiracies to violate those fundamental rights derived from the Constitution.

*Novotny*, 442 U.S. at 378–79, 99 S.Ct. 2345 (Powell, J., concurring) (emphasis added). In a separate concurrence, Justice Stevens wrote that "the Congress which enacted [§ 1985(3) ] was concerned with providing federal remedies for the deprivations of rights protected by the Constitution and, in particular, the newly ratified Fourteenth Amendment." *Id.* at 383, 99 S.Ct. 2345 (Stevens, J., concurring). Thus, according to Justice Stevens, the statute was not "intended to provide a remedy for the violation of statutory rights—let alone rights created by statutes that had not yet been enacted." *Id.* at 385, 99 S.Ct. 2345.

In 1989 the Supreme Court, in interpreting the scope of § 1981, held that the statute as enacted by the Reconstruction Era Congress in 1866 did not encompass "racial harassment relating to the conditions of employment." *Patterson v. McLean Credit Union*, 491 U.S. 164, 171, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). The Court explained that such racial harassment "is not actionable under § 1981 because that provision does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." *Id.* It was not until the passage of the Civil Rights Act of 1991 that those claims could be brought under § 1981. As Justice Stevens reasoned in *Novotny*, § 1985(3) does not provide a remedy for statutory rights created after the passage of § 1985(3). *See Novotny*, 442 U.S. at 385, 99 S.Ct. 2345 (Stevens, J., concurring); *see also id.* at 379, 99 S.Ct. 2345 (Powell, J., concurring). Thus § 1981's prohibition against racial harassment relating to the conditions of employment was not a statutory right in existence at the passage of § 1985(3). It therefore cannot form the substantive basis for a § 1985(3) conspiracy.

Accordingly, Jenkins' Third Claim for Relief is dismissed.

### Conclusion

For the reasons set forth above, Defendants' motion to dismiss is granted. Jenkins is granted leave to replead her First and Second Claims for Relief and shall do so within twenty (20) days of this decision.

It is so ordered.